## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone Cab Service, Inc.,                     :
EZ Taxi, LLC, United Cab, LLC,                  :
and Good Cab, LLC,                              :
                          Petitioners           :
                                                :
              v.                                :
                                                :
Pennsylvania Public Utility                     :
Commission,                                     :      No. 232 C.D. 2017
                          Respondent            :      Submitted: September 11, 2017


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COVEY                                     FILED: October 3, 2017


Keystone Cab Service, Inc., EZ Taxi, LLC, United Cab, LLC and Good Cab, LLC (collectively, Protestants) appeal from the Pennsylvania Public Utility Commission's (PUC) February 9, 2017 order adopting the Administrative Law Judge's (ALJ) initial decision (Decision) granting Go Green Taxi, LLC's (Go Green) application for approval to purchase the operating rights of AAA Alpine Taxicab Company, LLC (AAA Alpine) to transport persons in call or demand service in the City of Harrisburg (Harrisburg), Dauphin County and within ten miles of the Harrisburg limits (Application). The sole issue before this Court is whether the PUC erred or abused its discretion by upholding the ALJ's decision precluding Protestants' exhibits at the Application hearing. After review, we affirm.

On September 15, 2015, Go Green filed its Application. On October 16, 2015, Protestants and Capital City Cab Service, Inc. (Capital City) timely filed protests to Go Green's Application. Protestants and Capital City alleged that Go Green's Application would not serve a useful public purpose responsive to a public

demand or need, but would duplicate already-existing service to the detriment of existing carriers. Additionally, Protestants and Capital City alleged that approval of Go Green's Application would impair their operations to such an extent that it would be contrary to the public interest. Protestants and Capital City also alleged that Go Green was neither technically nor financially capable of providing the service its Application proposed.

An ALJ hearing was held on March 7, 2016. Go Green was represented by counsel who presented eight witnesses and five exhibits which were admitted into the record. Protestants and Capital City were represented by their respective attorneys but did not present any witnesses. Protestants marked five exhibits for identification, which were admitted into evidence but objected to thereafter on the ground that Protestants failed to provide the same during discovery. Specifically, the precluded exhibits included: (P-1) Verification - Responses to Interrogatories signed by Lamont Palmer, Jr.[1] (Palmer, Jr.); (P-2) First Set of Interrogatories, Question 29, wherein Palmer, Jr. stated that only Lamont Palmer, Sr.[2] (Palmer, Sr.) had been convicted of a crime; (P-3) Dauphin County Common Pleas Court Docket reflecting Palmer, Jr.'s conviction for possession of marijuana - small amount for personal use, and use and possession of drug paraphernalia; (P-4) the PUC's Initial Decision granting Harrisburg City Cabs, Inc. (Harrisburg City Cabs) its call and demand authority indicating that Palmer, Sr. was no longer under supervision for his Possession with Intent to Deliver a Controlled Substance (PWID) conviction; and (P-5) Dauphin County Common Pleas Court Docket of Palmer, Sr.'s 1991 PWID offense and related 2014 warrant. Protestants also attempted to admit (P-6)

---

[1] "Lamont Palmer, Jr. is the president and sole shareholder of Go Green." ALJ Decision at 6.

[2] Lamont Palmer, Sr. is Palmer, Jr.'s father and owner of Harrisburg City Cabs, Inc. "Lamont Palmer, Sr. will help at Go Green initially until [] Palmer, Jr. gets the business going." ALJ Decision at 9.

Magisterial District Judge December 1, 2001 Traffic Docket relating to Palmer, Sr.'s traffic ticket for permitting someone to drive without a license. After a discussion on the record regarding the admissibility of Protestants' six exhibits, Go Green's objection was sustained, and the exhibits were stricken from the record. *See* Notes of Testimony March 7, 2016 (N.T.) at 115-120. Importantly, the testimony regarding Exhibits P-1 through P-5 was not stricken.

Pursuant to the ALJ's briefing schedule, the parties filed briefs on April 29, 2016. On May 4, 2016, Go Green filed a motion to strike portions of Protestants' and Capital City's brief, contending that certain arguments had no basis in record evidence.[3] On May 24, 2016, Protestants and Capital City answered Go Green's motion, asserting that a portion of their brief was an offer of proof regarding why the documents were not provided to Go Green during discovery. Protestants and Capital City further argued that since the documents were public records, the ALJ had the discretion to take judicial notice of them. On May 27, 2016, the ALJ granted Go Green's motion to strike. On June 15, 2016, the parties filed reply briefs and the record was closed. On July 8, 2016, the ALJ issued the Decision dismissing the protests and granting the Application. On July 28, 2016, Protestants and Capital City filed Exceptions. Go Green filed a reply to the Exceptions. On February 9, 2017, the PUC adopted the ALJ's Decision. Protestants appealed to this Court.[4]

---

[3] Go Green's motion also requested an expedited response and a suspension of the briefing schedule. On May 6, 2016, the ALJ issued an order denying the request for an expedited response, but suspending the briefing schedule.

[4]
> 'Typically, questions concerning the admission or exclusion of evidence in an administrative proceeding are within the discretion of the tribunal conducting the hearing and are not to be disturbed on appeal absent a finding of abuse of discretion.' *D'Alessandro v. Pa. State Police, . . .* 937 A.2d 404, 409 ([Pa.] 2007) (citation omitted). . . . Evidentiary rulings which did not affect the decision will not provide a basis for disturbing the fact-finder's judgment.

*R.J.W. v. Dep't of Human Servs.*, 139 A.3d 270, 290 (Pa. Cmwlth. 2016).

Initially, Section 41.14 of the PUC's Regulations provides in relevant part:

(a) **An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful public purpose, responsive to a public demand or need**.

(b) **An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service**. In addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally. In evaluating whether a motor carrier applicant can satisfy these fitness standards, the [PUC] will ordinarily examine the following factors, when applicable:

(1) Whether an applicant has sufficient capital, equipment, facilities and other resources necessary to serve the territory requested.

(2) Whether an applicant and its employees have sufficient technical expertise and experience to serve the territory requested.

(3) Whether an applicant has or is able to secure sufficient and continuous insurance coverage for all vehicles to be used or useful in the provision of service to the public.

(4) Whether the applicant has an appropriate plan to comply with the [PUC's] driver and vehicle safety regulations and service standards contained in Chapter 29 (relating to motor carriers of passengers).

(5) An applicant's record, if any, of compliance with 66 Pa.C.S. (relating to the Public Utility Code[5]), this title and the [PUC's] orders.

(6) Whether an applicant or its drivers have been convicted of a felony or crime of moral turpitude and

_____
[5] 66 Pa.C.S. §§ 101-3316.

4

remains subject to supervision by a court or correctional institution.

52 Pa. Code § 41.14 (emphasis added). In the instant case, the PUC held:

> [Go Green] was entitled to a presumption of need because the Application involves the transfer of an existing certificate. Nonetheless, Go Green provided ample evidence that the proposed service would fulfill some useful public purpose and be responsive to public need and demand. Additionally, we agree with the findings of the ALJ that Go Green has satisfied its burden of demonstrating its technical and financial fitness to provide the proposed service and that it has the propensity to operate safely and legally. [Protestants and Capital City] did not present any substantial evidence of record to dispute these findings.

PUC Opinion and Order at 14.

Protestants argue that the ALJ erred by excluding their exhibits for failing to disclose them during discovery pursuant to Section 5.321 of the PUC's Regulations, 52 Pa. Code § 5.321 (relating to scope of discovery), because until Go Green presented its case, Protestants had no reason to believe that they would be necessary. Protestants further maintain it was not until Go Green opened the door to the issues of Palmer, Sr.'s character, criminal history, and the nature of his and Harrisburg City Cabs' relationship with Go Green that the exhibits became relevant. Protestants also contend that because the documents are public records, the ALJ should have taken judicial notice of them. The PUC rejoins that the exhibits were properly excluded because, during discovery, Go Green requested copies of the exhibits Protestants intended to present during the hearing, and Protestants responded that they had none. The PUC also argues that the exhibits were properly excluded because they were irrelevant; thus, Go Green's objections to said exhibits were properly sustained.

Pursuant to the PUC's Prehearing Order, the parties were instructed:

> **That the parties shall conduct discovery pursuant to [Sections 5.321 through 5.373 of the PUC's Regulations,]**

5

> **52 Pa. Code §§ 5.321-5.373**. [The ALJ] encourage[s] the parties to cooperate and exchange information on an informal basis. The parties shall cooperate rather than engage in numerous or protracted discovery disagreements that require my participation to resolve. All motions to compel shall contain a certification by counsel setting forth the specific actions the parties have undertaken to resolve their discovery disputes informally. If a motion to compel does not contain this certification, [the ALJ] shall contact the parties and direct them to resolve the matter informally and provide the certification if they are unsuccessful. **There are** limitations on discovery and **sanctions for abuse of the discovery process.** 52 Pa. Code §§ 5.361, 5.371-5.372.

Reproduced Record (R.R.) at 324 (emphasis added). In addition, the Prehearing Order further directed: "That if a party intends to present any documents or exhibits for [the ALJ's] consideration, that party must bring sufficient copies to supply one copy to [the ALJ], two to the court reporter and one for each party listed on the attached service list." R.R. at 323. Section 5.321 of the PUC's Regulations provides, in relevant part:

> (c) *Scope.* Subject to this subchapter, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at hearing if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

> . . . .

> (f) *Purpose and methods.* A party may obtain discovery for the purpose of preparation of pleadings, or for preparation or trial of a case, or for use at a proceeding initiated by

6

petition or motion, or for any combination of these purposes, by one or more of the following methods:

(1) Deposition upon oral examination or written questions.

(2) Written interrogatories to a party.

([3]) On the record data requests in rate cases.

52 Pa. Code § 5.321.

Here, Go Green sent a discovery request to Protestants and Capitol City expressly seeking "copies of all exhibits to be presented at the hearing." R.R. at 312. Protestants and Capitol City responded: "None at this time. However, [] Protestants [and Capitol City] reserve the right to supplement this response as discovery is ongoing." *Id*. No exhibits were sent at any time thereafter. Protestants argue that they did not provide the documents because the exhibits were strictly for rebuttal purposes and they did not know whether they would be needed during the hearing. The Court finds this argument disingenuous considering first, that Protestants were challenging the Application on the grounds of Go Green's technical and financial fitness, and second, because Protestants had the exhibits copied and ready to be presented for the ALJ's consideration as the Prehearing Order instructed. Moreover, Section 5.321(c) of the PUC's Regulations requires production of discovery in support or defense of a claim. Clearly there was a lack of good faith on the part of Protestants. After a thorough review of the record, the PUC did not err or abuse its discretion in upholding the ALJ's decision to exclude the exhibits.

Protestants claim that the ALJ should have taken judicial notice of the documents, or Go Green should have had constructive notice of them because they are public records. The fact that the exhibits may have been public records, did not relieve Protestants of their obligation to produce them when the same were expressly requested during discovery. Further, Protestants' contention that Go Green's proof that the persons involved with the day-to-day operations of the company would do so

7

safely and legally "opened the door" for their exhibits is also without merit. Protestants' Br. at 13. Because Go Green's burden in this proceeding was to demonstrate that it has the propensity to operate its company legally and safely, Protestants cannot reasonably argue they were unaware that their exhibits would be relevant until after Go Green presented its case. Moreover, the exhibits presented to rebut this testimony (*i.e.*, Palmer, Jr.'s and Palmer, Sr.'s criminal records, Palmer, Jr.'s interrogatory answer and the verification of the same, and Harrisburg City Cabs' compliance record), were irrelevant to the issues before the ALJ.

Specifically, with respect to Exhibits P-1, P-2 and P-3, the evidence pertaining to Palmer, Jr.'s marijuana possession conviction, Palmer, Jr.'s criminal conduct is irrelevant to the PUC's consideration of Go Green's Application. Although Palmer, Jr. is the president and sole owner of Go Green, the applicant is Go Green, a limited liability corporation. "[T]he general rule in Pennsylvania [is] that a corporation shall be regarded as an independent entity even if . . . its stock is owned entirely by one person." *Yellow Cab Co. of Pittsburgh v. Pa. Pub. Util. Comm'n,* 673 A.2d 1015, 1018 (Pa. Cmwlth. 1996). Because there was no evidence that Go Green was created to disguise or perpetrate a fraud, there is no justification for "disregarding the independent entity of the corporate applicant in this proceeding." *Id.* Thus, Exhibits P-1, P-2 and P-3 are irrelevant to show Go Green's propensity to operate unsafely or illegally. *Id.* Accordingly, the ALJ properly sustained Go Green's objection to the admission of Exhibits P-1, P-2 and P-3.

Relative to Exhibits P-4, P-5 and P-6, the evidence pertaining to Harrisburg City Cabs and Palmer, Sr.'s criminal and traffic offenses, Harrisburg City Cabs' and Palmer, Sr.'s conduct is irrelevant to Go Green's Application.

> [Section 41.14 of the PUC's Regulations,] directs the [PUC] to consider the 'applicant's' compliance history, not that of the applicant's corporate affiliate. . . . [Section 41.14(b) of the PUC's Regulations] directs a review only of the

8

> 'applicant's' compliance history. This regulation is binding on the [PUC]. Indeed, we have cautioned that the [PUC] and courts may not disregard 'the independent entity of the corporate applicant.' *Yellow Cab Co*[.]*,* 673 A.2d at 1018. [Go Green] and [Harrisburg City Cabs] are separate legal entities, have separate licensing histories and operate in different service areas. . . . In short, [Harrisburg City Cabs'] compliance history is irrelevant[.]

*Rosemont Taxicab Co., Inc. v. Phila. Parking Auth.,* 68 A.3d 29, 37 (Pa. Cmwlth. 2013). Similarly, although Section 14.14(b)(6) of the PUC's Regulations requires the PUC to determine "[w]hether **an applicant or its drivers** have been convicted of a felony or crime of moral turpitude and remains subject to supervision by a court or correctional institution[,]" because Palmer, Sr. is not the applicant or a Go Green driver, his conduct is irrelevant to Go Green's Application. 52 Pa. Code § 14.14(b)(6) (emphasis added). Therefore, the ALJ properly sustained Go Green's objection to the admission of Exhibits P-4, P-5 and P-6.

Notwithstanding, whether Exhibits P-1 through P-5 were properly stricken is of no consequence to the PUC's determination because the testimony relating thereto remained part of the record. Thus, the ALJ still considered the content of the exhibits. With respect to Exhibits P-1, P-2 and P-3, the ALJ specifically opined:

> Concerning [] Palmer, Jr., evidence of [] Palmer Jr.'s criminal history is already in the evidentiary record. Under cross[-]examination, he admitted that he ha[d] been convicted of possession of marijuana in 2011. N.T. 69-70. There is no need to take judicial notice of official documents that restate what has already been admitted.

ALJ Decision at 32. Relative to Exhibits P-4 and P-5, Palmer, Sr. admitted that he was arrested for PWID in 1991, and that the docket entries reflect a "capias warrant"

9

issued for him on May 15, 2014 for that charge.[6] N.T. at 112. Consequently, regardless of whether the exhibits were properly excluded, the ALJ fully considered their contents.

With respect to Exhibit P-6 and other "numerous complaints issued by the [PUC] against Harrisburg City Cab[s,]"[7] the ALJ precluded the documents on the basis of the discovery violation and relevance. Expressly, the ALJ declared:

> [T]he documents [] Protestants request that I take judicial notice of are irrelevant. This is an application by Go Green [] to purchase the operating rights of AAA Alpine. Any information concerning the conduct of Harrisburg [City] Cab[s] is irrelevant since it is not the applicant or the entity being acquired. Go Green, AAA Alpine and Harrisburg [City Cabs] are separate corporations. The fact that the shareholders of Go Green and Harrisburg [City Cabs] are related does not change this. Harrisburg [City] Cab[s]' compliance history is irrelevant to this application. *Rosemont Taxicab Co. . . .*

ALJ Decision at 30. Accordingly, accepting Protestants' exhibits into evidence would not have affected the ALJ's decision to grant the Application.

For all of the above reasons, the PUC's order is affirmed.


_____
ANNE E. COVEY, Judge

---

[6] Palmer, Sr. explained the circumstances surrounding the warrant's issuance and dismissal. *See* N.T. at 112-113.

[7] With respect to the other "numerous complaints," Protestants did not identify the proffered documents for the record.

10

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone Cab Service, Inc., : 
EZ Taxi, LLC, United Cab, LLC, : 
and Good Cab, LLC, : 
                         Petitioners : 
                                      : 
                    v. : 
                                        : 
Pennsylvania Public Utility : 
Commission, :     No. 232 C.D. 2017
                        Respondent : 

## O R D E R

AND NOW, this 3rd day of October, 2017, the Pennsylvania Public Utility Commission's February 9, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge